## ACME HARVESTING MACHINE CO. v. BARKLEY.

In an action on a promissory note given for the purchase price of a machine, allegations in the answer that defendant tendered back the machine, and offered to pay for its use, were inconsistent with allegations of an entire failure of consideration, as raising an implication that the machine had some value.

In an action for the purchase price of a machine, where the defense was that the machine would not do the work as warranted, where the answer did not allege when the offer to return the machine was made, or that it was within the proper time after the breach of warranty, it was insufficient to show a rescission under the statute.

In an action for the purchase price of a machine, the answer was insufficient as a counterclaim for damages for breach of warranty, where it did not allege what the value of the machine would have been if as warranted.

On the question whether failure to return a machine promptly for breach of warranty was excused, it was immaterial that the buyer of a machine would have returned it if the seller had not replaced broken parts, where he did not so advise the seller, and did not receive the promise to repair in consideration of retaining the machine, as any intention to return the machine must have been communicated to the seller.

The buyer of a machine, under a warranty that it would do the work satisfactorily, could not counterclaim for damages for breach of warranty, in an action for the purchase price, except under such circumstances as would give him the right to rescind the contract and return the machine.

Where a machine was sold under a warranty that it would do good work, and requiring the purchaser to notify the seller of any failure to fulfill the warranty, if the machine failed to fulfill the warranty while the seller's agent was present to test it, the buyer was not required to give notice of the breach, as the presence and knowledge of the agent was a waiver of notice.

Where a machine was sold under a warranty of fitness which required notice to the seller of any failure of the machine to fulfill the warranty, and a reasonable time in which to remedy the defects, if the buyer considered that a defect in the machine was a breach of the

warranty, he should have notified the seller thereof within a reasonable time, so as to enable it to fulfill its obligation under the warranty.

In an action for the purchase price of a machine, where the defense was breach of warranty, the fact that the company which sold plaintiff the machine had ceased to exist at the time of the alleged breach of warranty did not relieve him from giving notice thereof, where its successor was practically the same company, and defendant did not attempt to give notice of the breach to any one.

Corson, J., dissenting.

(Opinion filed, December 8, 1908.)

Appeal from Circuit Court, Clark County. Hon. GEORGE H. MARQUIS, Judge.

Action by the Acme Harvesting Machine Company against William Barkley. From a judgment in part for plaintiff, and from an order denying a new trial, plaintiff appealed. Judgment and order reversed, and new trial granted.

*Sears & Potter* and *S. A. Kennan,* for appellant. *C. G. Sherwood,* for respondent.

WHITING, J. This action is one brought upon a promissory note given as the consideration, or part consideration, upon the purchase of a harvesting machine commonly known as a "push" or "header" binder. The complaint is in the ordinary form, and alleges the giving of the note to the Acme Harvester Company and the assigning of said note by said company to the plaintiff and its nonpayment. The answer admits the giving of the note and its nonpayment, and by way of defense, alleges that this note was given to the payee thereof for a push binder; further alleges that upon said sale the said payee of said note made certain representations and warranties through its agent, said warranties being to the effect that said machine so sold was made of good material, was well made and constructed, and that the same was capable of and would do good work when properly run. Other warranties were claimed, but these are absolutely immaterial, not being in any manner relied upon in the trial of the case. We might say in passing that there was no allegation of any implied warranty, and no attempt on the part of the pleader to bring these warranties under section 1328 of the Revised Civil Code; there being no allegation that the machine company was the maker of the machine for which

the note was given. The defendant then set up a breach of the warranty above referred to, in that it is claimed that said machine was not well made, was not made of good material, and that the same was incapable of and would not do good work when properly run. Then follows an allegation alleging a total failure of consideration owing to such breach of warranty, followed by an allegation that the defendant tendered back the machine, and offered to pay for the use thereof during the year 1905, being the year in which it was purchased. This latter allegation, implying as it does that the machine had some value, is entirely inconsistent with the allegation of total failure of consideration, and there is insufficient in the answer to set forth a rescission under the statute, among other things, it not being alleged when this offer to return said machine was made, and nothing to show that it was made within proper time after the breach of warranty. Defendant further pleads what was evidently intended as a counterclaim for damages for the alleged breach of this warranty. Although denominated as a counterclaim, it fails to contain some of the usual and necessary allegations of such a counterclaim under our statute; there being no allegation of what the value of the machine would have been if as warranted. This same paragraph contains certain allegations of damages which were in no way relied upon during the trial, but the trial appears to have been conducted solely upon that part of this paragraph which attempts to allege the ordinary damages for breach of warranty, to-wit, the difference between the value of this machine as it was and its value if it had been as warranted.

The answer in no place set forth that the warranties were written, and it is quite evident that, when drawing the answer, it was drawn without any written warranty before the pleader, and perhaps without the knowledge that a written warranty existed; but upon the trial of the case, soon after the defense opened, upon the cross-examination of the defendant, it was revealed that the warranty given was in writing and the warranty was then introduced in evidence, and from that time on the case appears to have been tried solely upon the theory that there was no other warranty except this written one. It is true that counsel for defendant in their brief upon appeal refer to section 1328 of the Revised Civil Code,

but, as heretofore stated, the pleadings were insufficient, and, furthermore, the case was tried throughout upon the question of the rights of the parties under the written warranty; no reference during the trial or in the instructions given by the court being made to the matter of an implied warranty. In passing we would state that there certainly is a doubtful question as to whether or not the defendant could rely on an implied warranty such as that referred to in section 1328, there being an express warranty of quality, but we do not pass upon this point either way, and leave this question to be raised by the defense in the trial court if they so desire and the said court permits through proper amendments.

The written warranty, above mentioned, and which was introduced in evidence, is in words as follows: "Any machine of our make is guaranteed to do good and efficient work for which it is intended when properly operated. The purchaser shall have one day to give it a fair trial. Should the implement then fail to fulfill this warranty, notice is to be given at once to the dealer from whom the machine was purchased, and after the dealer has used his best efforts, and should the machine still fail to fulfill the warranty, then both the purchaser and the dealer are to give immediate notice to the Acme Harvester Company (incorporated) at Peoria, Peoria county, Illinois, or their authorized general agent, stating wherein the machine fails to fulfill the warranty, and a reasonable time is to be allowed for instructions to be given or if necessary, the sending of a person to put it in order or to remedy the defects, if any; the purchaser rendering any necessary assistance and furnishing suitable teams, etc., when if it cannot be made to fulfill the warranty, he shall return it to the place where received free of charge, and in as good a condition as when received and a new machine will be given in its place, or the notes and money will be refunded. Under no circumstances will the machine be allowed to be returned without an understanding and direct instructions from the Acme Harvester Company. If notice of difficulty be not received as above stated, it will be conclusive evidence of satisfaction."

It appears from the evidence that the plaintiff corporation is virtually one and the same as the payee of the note, being its suc-

cessor and having practically the same officers, directors, and agents. The other facts in this case appearing from the testimony and which are material to the issue herein are in brief as follows: This machine was purchased in the early part of August, 1905, and used upon the farm of defendant and tried for at least one or two days before the said note was given in settlement thereof, and at the time of the said settlement and the giving of said note the defendant gave to the agent of the company, who set up and started said machine, a written statement addressed to the machine company to the effect that said machine worked to his entire satisfaction and completely fulfilled the terms of warranty under which said machine was purchased. Upon the trial the defendant claims he signed this paper under a mistake as to what it contained, but a careful examination of the evidence will show that at the time said paper was signed the statement therein contained was entirely consistent with the views that the defendant had in regard to the workings of said machine. This machine was bought through a local agent by the name of Fancet, one Phillips assisting in making the sale; said Phillips being an expert and being the person who started the machine. Phillips stayed with the machine a considerable part of at least the first two days and returned to the machine one or more times during the first week or ten days, and it appears clearly from the evidence that during the time Phillips was with the said machine the same did satisfactory work with the exception that two small castings were broken, but the same were readily replaced, and their breaking cannot in any way be held to be a breach of the warranty. Toward the latter part of the harvesting season of 1905 this machine was taken into a field of sod flax, and while working thereon the machine appears to have sprung out of shape, i. e. the pole or tongue, being a hollow iron tubing to the back end of which the horses are hitched and by which the machine is propelled, was bent, and the frame of the machine was sprung out of square. From the evidence it would seem without question that this came about through an attempt to turn the machine with six horses attached thereto when the two main wheels supporting the machine were both down in a dead furrow. This appears clearly from the testimony of the son of the defendant who drove said

machine, and it appears clearly that up to this time the defendant was satisfied with the working of said machine, as was evident by the following from his testimony: "So far as I know, the machine worked all right while Mr. Phillips was there the first season, and I was well pleased with it, and did not of my own knowledge know what a poor machine it was until 1906. I did not give it any attention in 1905 until we were cutting flax. I do not know but what it worked satisfactorily until we got to the flax, only by what my son said. There was not much complaint until we got to the flax. I could not see the binder work. It did not stop. It went right along. The machine worked satisfactorily as near as I know in the 'fall of 1905, until we went into the flax. I estimate that I had about 40 acres of flax in all, and this binder cut all but 15 acres. I noticed that the iron tubing [referring to the tongue above mentioned] was bent when it came into the yard from the field. My boy told me afterwards it got bent turning around." It appears undisputed that the defendant himself did not run this machine, except a very little on the first day it was started, but that thereafter it was run entirely by his son, and this son is the person from whom the father received the information above referred to. The son was also a witness at the trial, and he says: "The pole of the machine in 1905 was bent near the front end. It was done turning a corner. It probably went into a dead furrow or something of that kind. I did not notice it until after I turned around. It went into a dead furrow, an ordinary dead furrow, right at the corner where I stopped and turned around. I noticed that the bar was bent right after I had straightened the horses back, and after that time I had trouble in running the machine. I noticed that the dead furrow kind of held it when I went to turn. It was an ordinary dead furrow, six, seven, or eight inches deep, and I was going at ordinary speed." He then speaks of the two little breaks that occurred the first days the machine was run, then states as follows: "The other breakages occurred about an hour after the push pole was bent. And then these other irons were broken, and I did not at that time run into a rock or any other obstruction." At another place in speaking of the second break which was the last one before the bending of the iron tubing or pole he says: "I do

not remember the day. It was before we got into the flax quite a while." Further he says: "It was on account of the dead furrow that the machine turned so difficult, and, if it had not been for the dead furrow, I could have turned the same as on any of the corners. And, if I had seen the dead furrow in time and had driven a little further, I could have turned without any trouble with the dead furrow. It is my opinion that it was on account of the wheels being in the dead furrow that it turned with difficulty and in that way the pole was bent. And ever after that pole got bent we had trouble with the machine." When, after reciting troubles he had after that time, he states: "So far as I could say, the machine worked satisfactorily until we got into the flax in 1905."

It thus appears that after the expert left that this machine ran satsifactorily for several days at least, and there is no evidence to show wherein it failed to do good work while it was cutting flax up to the time when this accident occurred in attempting to turn around when the wheels were in the dead furrow. Nowhere in the testimony is there a particle of evidence that the defendant ever gave any notice to the company from which the machine was bought, or the plaintiff, its successor, or to the general agent of said company, or to the local agent through whom the sale was made, that in his opinion this machine was not up to the warranty. It does appear that in the year 1906 he notified a local agent in another town that in his opinion the machine was no good, and he claims upon the witness stand that in the harvest of 1906 he made up his mind that this machine was no good, but that he still procured repairs for the same and kept on running it and did not notify the company of his intention to take advantage of the breach of any warranty. It appears that after the accident above referred to, and after the breaking of several castings which occurred soon after such accident, he did go to the local agent through whom he made the purchase, and notified him of said defective or broken castings. He did not in any way complain of the working of said machine as far as the evidence shows. In fact, he specifically admits that he never notified this party that in his opinion the machine was no good or failed to live up to the warranty. But it appears that at that time the agent assured him that the company

would replace these broken parts and advised him to apply therefor. Upon the trial he claims that, if these promises to replace the broken parts had not been made, he would never have retained the machine, but this is certainly immaterial; i. e., it is immaterial as to what was in his mind or what he would have done as long as he did not so advise the plaintiff or any of its agents and then receive the promise of these repairs in consideration of retaining the machine another year. In the summer of 1906 he used this machine and cut considerable grain therewith, but it appears that the machine did not work satisfactorily, and it was necessary to procure several repairs therefor. But, after the defendant stated that he knew the machine was worthless, he continued to run the same, and never notified the company of any desire to return the same, or that he considered, that there had been a breach of the warranty, except that some time in the fall of 1906, the exact time not being given, but probably not earlier than October 1st, the time the note sued on fell due, when the collecting agent for the company came around, he then offered to return the machine and pay a part of the amount due upon the note, providing the note would be surrendered to him. This is absolutely the only evidence of any act upon the part of the defendant indicating that he considered the warranty broken and intended to take advantage of his rights thereunder.

This case was tried evidently upon the theory that the machine company waived its right to notice by the fact that its agent was present at the starting of the machine, and off and on for a few days thereafter, and that the plaintiff waived its right to such an extent that the defendant had a right to counterclaim for any breach of the conditions of the warranty without being required to abide by the remedy provided for in said warranty, to wit, the rescission of the contract and the return of the machine. We do not at this time give any opinion on the question as to whether the defendant could, under any circumstances, be freed from his duty to descind, and have a right to resort to a counterclaim for damages; but we do not believe that, if he had such right, he could take advantage of it except under facts which would have given him the

right to rescind the contract and return the machine. Was the trial court right in its theory that under the facts, as set forth by the defendant, they had the right to counterclaim, providing they would have such right of counterclaim in case they had not lost the right to rescind? We are clearly of the opinion that said trial court was in error. We do not take the position that the ·plaintiff· could not waive the necessity of notice as required in said warranty at the time therein required, and we are of the opinion that while the selling agent of the company or the expert sent by the company to start this machine was present and knew of the condition of the machine, and at that time said machine had failed to live up to the waranty, no notice thereof would have been neccssary to have been given by the defendant to the company in order to entitle him to maintain his rights for the breach of said warranty. This court has already held in the case oif Peter v. Plano Mfg. Co., 21 S. D. 198, 110 N. W. 783, that the duty to give such notice was waived while a general agent was present and knowing of the condition of the machine. And, if it was before us, it might be that this court would go to the full extent of the opinion in the case of Springfield Engine & Thresher Co. v. Kennedy et al., 7 Ind. App. 856, 34 N. E. 856, cited by the defense. But, admitting for the sake of discussion· that the rule of law laid down in the last case is a correct rule, yet we cannot see that it applies to this ·case. It appears that, while the expert was present and for several days after his last visit, this machine worked with entire satisfaction. There was no notice to be waived as there was no reason for giving any notice to the company. This machine worked satisfactorily up to the time it was twisted out of shape in the flax field. If this injury to the machine was from any defect in the machine, and it was not shown that it was, then, if the defendant considered this a breach of the warranty, if his rights had not already been lost by lapse of time, he was bound within a reasonable time to give the payee of the note notice that the machine was not up to warranty, and give the company an opportunity to comply with its obligation under said warranty. And under any circumstances when, as he claims, he became thoroughly convinced that this machine was worthless (and he states he did so become convinced in the

season of 1906) instead of sending for repairs for the machine without mentioning his opinion of the said machine, and instead of continuing to run the same, he should have notified the company or its agent of his intention to rely upon said warranty and the breach thereof. It is claimed that the defendant was relieved of any duty to give notice for the reason that the corporation to whom notice should have been given had ceased to exist. We cannot agree with this position. The defendant never set this up as a reason for not giving notice, and, furthermore, as heretofore stated, it appears that one corporation was practically the same as the other with the same officers and agents. If there had been any attempt on the part of the defendant to live up to the conditions of this written warranty by the giving of notice to any person who was or had been the agent of either of these corporations, then this claim of the defense might merit some attention.

Our conclusion is that errors were committed in the trial of this case in the trial court prejudicial to the rights of the plaintiff, and the judgment and order denying a new trial are reversed and a new trial granted.

CORSON, J., dissents.