SHEAFE, Respondent, v. ZASTROW, Appellant.

(138 N. W. 16.)

1.  **Sales—Action for Purchase Price—Directed Verdict—Pleading Rescission—Proof.**

In an action for price of a heating plant sold under express warranty, defendant's evidence supported his counterclaim that plant was valueless, and counterclaim sought recovery back of part of purchase money admittedly paid by defendant. **Held,** that defendant, without having pleaded or proved a rescission of the contract, was entitled to have jury pass on his right to recover the payment made, regardless of other elements of damages pleaded by him.

2.  **Sale—Counterclaim for Part Payment Made—Sufficiency— Allegation of Value—Warranty.**

In an action for price of a heating plant, a counterclaim to recover part payment made is not bad for failing to allege what would have been the value of the plant if as warranted, it containing an allegation of contract price, which is equivalent to an allegation of such value.

3. **Sale—Warranty Contract—Amending Answer to Show Implied Warranty.**

Where a sale contract contained written warranties, there could be no implied warranty. **Held**, trial court did not err in refusing to allow defendant to amend his answer to show an implied warranty.

(Opinion filed October 25, 1912.)

Appeal from Circuit Court, Day County. Hon. FRANK Mc-NULTY, Judge.

Action by M. W. Sheafe against August Zastrow, to recover balance of purchase price of a heating plant. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

*Anderson & Waddel,* for Appellant.

Under the terms of Exhibit A, the contract of purchase, it is expressly warranted and agreed that all work is to be done in a workmanlike manner and that material used is not defective and that the furnace is to be of sufficient size to heat the lower floor to a temperature of 70 degrees and the upper floor to a temperature of 60 degrees in all weather where the thermometer does not register more than 25 degrees below zero, providing that sufficient fuel and the proper management of the furnace is used. These conditions were agreed to by appellant when he signed Exhibit A and he further agreed in effect that when these conditions were fulfilled that he would make the payment provided for therein.

Under the law the burden is on plaintiff to not only plead but prove a performance on his part of the conditions of the contract on which he relies. 9 Cyc. p. 720; Deering v. Claypool, (Neb.) 89 N. W. 373; Irrigation Co. v. Wilson, 57 Neb. 396, 77 N. W. 762; Palmer v. Sawyer, 114 Mass. 1; Couch v. Ingersoll, 2 Pick. 292; Gardiner v. Corson, 15 Mass. 500; Hopkins v. Young, 11 Mass. 302; Hoy v. Hoy, 44 Ill. 469; Jones v. Perot, 19 Colo. 141, 34 Pac. 728; Ellsworth v. Buell, 4 Ind. 555; Louisville v. Muldoon, 94 Ky. 46, 22 S. W. 847; Cleaveland v. Moore, 9 B. Mon. 378; Morgan v. Driggs, 3 La. Ann. 124; Henry v. Sacramento, 116 Cal. 628, 48 Pac. 728; Speer v. McLaughlin, 11 Ark. 732; Becker v. Sweetzer, 15 Minn. 427; Ackley v. Richman, 10 N. J. L. 304; Oakley v. Morton, 11 N. Y. 25, 26 A. Dec. 49; Brown v. Colie, 1 E. D. Smith, 265; Williams v. Healey, (N. Y.) 3 Den. 363; Ball v. Boud, 26 Ore. 14, 37 Pac. 70; Bradford v.

Gray, (Tenn.) 3 Yerg. 463; Goldsborough v. Orr, (U. S.) 8 Wheat. 217, 5 L. Ed. 600; Tucker v. Woods, (N. Y.) 7 Am. Dec. 305.

We contend that there was an implied warranty arising from the undisputed evidence in this case. As to whether or not the defendant might avail himself of this implied warranty in the absence of pleading it in his answer in the first instance is a question upon which we believe the authorities are not in entire harmony. In the case of Ideal Heating Co. v. Kramer, (Iowa) 102 N. W. 840, we find a case which it occurs to us is on all fours with the case at bar. Fitzgerald v. La Porte, (Ark.) 40 S. W. 261; Smith v. Clark, 58 Mo. 145; 2 Mechem on Sales, Par. 1344; Section 1329 Civil Code S. D.

Section 150 of the Code of Civil Procedure provides:

"The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, etc."

It is true that the matter of granting or denying applications for leave to amend are largely discretionary with the trial court, but it is also true that trial courts may abuse such discretion and when they do this court will review their acts. At the time of the application for leave to make the first amendment (Abst. folios 90-1-2-3-4-5), it had been clearly established without objection that the respondent was at the time of the entering into the contract the manufacturer of the furnace in question and was engaged in the business of selling the same; that the appellant had never seen the furnace before he purchased it, had never inspected it or had any opportunity of inspecting the same or any other furnace of the same make. Thus we contend that by the undisputed evidence and without objection the appellant had established facts sufficient under our statute and the decisions hereinbefore referred to, to get the benefit of the statutory implied warranty. Under such circumstances we believe that the benefit should have been given to the appellant, irrespective of his failure to specifically plead the same in the first instance, and even though he had failed to ask leave to amend the pleading to conform to the evidence. But having made such motion it seems to us that the court in denying the same was clearly contravening the spirit and the intent of our

statute relating to amendments. This respondent was in court to recover what he claimed to be the purchase price of this furnace. The facts upon which the implied warranty must rest, if at all, were proven by the testimony of respondent and that of his agent, Mr. Dodds.

What we have said relative to the court's refusal to permit the first amendment we think applies equally to its refusal to permit the second amendment.

*Sears & Potter,* and *Mark W. Sheafe, Jr.,* for Respondent.

Two and only two courses were open to appellant for his defense and he must plead and prove the defense relied upon to defeat respondent's suit. He must either rescind the contract and counterclaim for the amount already paid on the property, or he must plead a counterclaim for breach of warranty and prove damages by reason of the breach. Neither defense was pleaded nor proven and the trial court had no other alternative than to direct a verdict for plaintiff and respondent.

Appellant contends in his brief that the undisputed evidence shows the furnace worthless. Brief folio 22. He evidently has overlooked the fact that he used the plant as installed from the date of the completed installation, on or about November 17, 1909, to March 4, 1910, and that the reason it was not used longer was because no fire was needed in the house and appellant removed his family from the state of South Dakota to Montana. Abst. folios 162-4. This does not show that the heating plant as installed was entirely worthless as such. The respondent met the burden of proof and proved that he had fulfilled all the conditions precedent, to-wit: the selling, delivering and installing of the heating apparatus.

There can be no question but what the purchase contract, Exhibit A, contains an express warranty and that being the case, it is a general rule of law that an express warranty in a written contract excludes any question of an implied warranty.

35 Cyc. 392, the author in discussing the question of express and implied warranties, says:

"An express warranty excludes an implied warranty on the same or a closely related subject. Thus an express warranty of quality excludes an implied warranty of fitness for the purposes intended."

The same facts apply to an express warranty. In order to recover for breach of warranty, the party alleging the breach must allege the value of the property if as warranted and this appellant failed to do in any manner.

Appellant cites authorities to uphold the doctrine that there are certain implied warranties running with the sale of a commodity in which the seller deals. Granting for the sake of argument that this be true, as before stated, appellant is not in a position to take advantage of any implied warranty or expressed warranty, he not having set up a proper counterclaim upon which any relief can be based. The allegations of the counterclaim as set up are not directed to any facts which would be a proper foundation for the allowance of damages even if they were true nor was there any evidence to support any of the allegations of the counterclaim.

In the case of Acme Harvester Machine Co. v. Barkley, 118 N. W. 690, in which practically the same circumstances arose, this court held, that an answer is insufficient as a counterclaim for damages for breach of warranty where it fails to allege what the value of the property would have been if as warranted.

SMITH, J. This is an appeal by defendant from a directed verdict in favor of plaintiff, and from an order denying a new trial. The complaint alleges, in substance: That the defendant requested the plaintiff to install a certain heating plant in the defendant's house in the town of Waubay. That, upon such request, the plaintiff did the work and furnished the material as agreed, and that the heating plant was of the reasonable value of $320. That the defendant has paid $150 upon the purchase price of the same, and demands recovery of the balance due upon the purchase price.

The contract under which the heating plant was furnished is not fully set out or alleged in the complaint, but was introduced by the plaintiff in evidence ,and is as follows: "Watertown, S. D. October 18, 1909. For and in consideration of the sum of three hundred and twenty, I, M. W. Sheafe, do hereby agree to sell, deliver and install, ready for use to August Zastrow of Waubay, S. D., one smoke consumer heater and ventilator. It is expressly understood that all work is guaranteed to be done in a workmanlike manner. We guarantee material used against all

defects, and agree to replace any or all parts within five years, with the exception of the grate bars and gas generator, and should these for any reason give out, we agree to replace the same at actual cost price to us. All hot air pipes are to be properly covered with asbestos paper and the furnace is to be of sufficient size to heat the house in which it is installed to a temperature of 70 degrees in all weather, where the thermometer does not register more than 25 degrees below zero, providing sufficient fuel and proper management of the furnace is used. It is expressly understood that the second floor be heated by the vent system and we do not agree to heat same to more than 60 degrees. I, August Zastrow, purchaser, agree to the above conditions in buying one smoke consumer heater and ventilator, one furnace and hereby agree to pay the sum of $320.00 for the same as follows: $———— to be paid when the furnace is delivered and riser pipes put in place, the balance $320 to be paid when the furnace is installed and tested.  August Zastrow."

The answer is somewhat lengthy, and we need only state so much thereof as will enable us to determine the theory upon which it appears to have been framed. The introductory sentence is: "Comes now the above-named defendant, and, for his answer to plaintiff's complaint herein, respectfully admits, denies, alleges, and shows to the court as follows:" "Admits the installation of the heating plant and the payment of $150 thereon, and alleges that the plant was furnished under a written contract which guaranteed that the same should be built in a good and workmanlike manner, that the material therein was to be of the best quality, free from defects, and that the plant when installed should be of sufficient size to heat the house to not less than 70 degrees, provided the thermometer did not register more than 25 degrees below zero. The answer further alleges that, after entering into said contract, plaintiff did pretend to install in defendant's house a heating plant, but that the same has entirely failed to heat said house in accordance with the provisions of said contract, and that in truth and in fact it has been impossible to live in said house during the fall and winter of 1909 by reason of the plant failing to furnish sufficient heat; that the upstairs in said house during all of said time has been uninhabitable by reason of such failure, and that the downstairs during a great portion of said time has been

uncomfortable, notwithstanding the fact that during all of said
time said heating plant has been furnished with abundance of
fuel and has been as well managed as could be; that at no time
during said period while the thermometer was not to exceed 15
degrees below zero has it been possible to heat the upstairs in
said house to a degree to exceed 30 degrees, and at no time has
it been possible, with the thermometer not to exceed 15 degrees
below zero, to heat the downstairs of said house to a degree to
exceed 60 degrees; that said heating plant was not built in a
workmanlike manner, but was so poorly and defectively con-
structed that it is entirely useless and of no value; * * * that
the steam tank placed between the furnace and the brickwork in
what is known as the hot air chamber is so poorly and defectively
constructed that the same will not hold water, but will leak the
same out nearly as fast as it can be put in, and will partially put
out the fire, and that all the water fixtures connected with said
furnace and heating plant are so defectively constructed that they
are leaky and of no value; that the arrangement connected with
said furnace for the circulation of hot and cold air is so unskill-
fully and defectively constructed; that the same does not properly
operate, and does not cause the hot and cold air to propertly
circulate; that said plant is further so defectively and unskillfully
constructed that during a great portion of the time certain ob-
noxious gases form in the hot air chamber, and come into the room
through the hot air pipes, to the great discomfort of defendant and
his family, and to the detriment of their health; that the smoke
consumer is so unskillfully and defectively constructed that it
does not consume the smoke or any part thereof, specifically denies
that said heating plant was of the value of $320 or any other
sum whatsoever, and alleges that the same was totally and entirely
worthless." The answer then proceeds: "And for a counter-
claim and set-off to the pretended cause of action set out in plain-
tiff's complaint defendant alleges that by reason of said *unskillful
and unworkmanlike and faulty construction of said heating plant,
as hereinbefore specifically stated and alleged,* he has been dam-
aged by reason of his inability to rent any portion of his upstairs
for a period of two months in the sum of $70; that by reason
of the discomfort and loss of health suffered during said time by
defendant and his family, on account of the failure of said heat-

ing plant to furnish sufficient heat, and by reason of the obnoxious gases thrown into the rooms by reason of the faulty construction thereof he has been damaged in the further sum of $500; that by reason of cutting holes in the floors of defendant's house by plaintiff in installing of said heating plant defendant has been further damaged in the sum of $100; that, by reason of the payment of defendant to plaintiff for and on account of said contract as aforesaid, defendant was damaged in the sum of $150, making defendant's counterclaim in the aggregate the sum of $820. Wherefore, defendant prays judgment that the plaintiff take nothing by this action, and that defendant have and recover of plaintiff the sum of $820 besides his costs and disbursements in this action." At the trial plaintiff introduced evidence that he sold to the defendant and installed in his house the heating plant described in the complaint, and had not been paid for the same, except the sum of $150, and rested his case.

The defendant, under the allegations of the answer, offered a large amount of evidence tending to prove that the heating plant did not fulfill the requirements of the contract; that it failed to heat the lower part of the house to exceed 62 degrees above zero when the thermometer was above 25 degrees below zero; and that the heating plant was not constructed in a good and workmanlike manner, and that it failed in every respect to comply with the terms of the contract. Most of this evidence appears to have been admitted over the objections of the plaintiff.

[1] At the close of all the evidence, plaintiff moved the court to direct the jury to return a verdict for the plaintiff upon the grounds: "That there is no evidence showing, or tending to show, the rescission of the contract in this: that the evidence conclusively shows that the defendant has retained possession of the article sold ,and is still retaining the same, and has never offered to return it, and that there was no evidence excusing or tending to excuse such offer of return." In support of this ruling, the plaintiff contends that the defendant failed to plead any breach of warranties contained in the contract, and had failed to rescind the contract, and had failed to plead any sufficient counterclaim under which he could recover damages in the action. It is defendant's contention that the facts alleged in the counterclaim and supported by the evidence entitle him to recover dam-

ages by reason of the plaintiff's failure to comply with the terms
of the warranty, and that the court erred in directing a verdict
for the plaintiff. A considerable portion of the briefs of counsel
of both appellant and respondent is devoted to a discussion of
the law of rescission, but we fail to see that the doctrine of re-
scission has any application whatever to the questions presented by
the record upon this appeal. No attempted rescission is pleaded
in the answer, nor is any such attempt disclosed by the evidence
in the record. It seems plain to us, therefore, that the specific
grounds upon which the plaintiff moved for direction of a ver-
dict at the close of the evidence were wholly irrelevant to any
issue before the court, and the ruling of the court seems to have
been wholly upon the fact that there had been no rescission alleg-
ed or proved, and that defendant still retained the heating plant,
and had not offered to return it, and had offered no evidence ex-
cusing or tending to excuse such offer of return. It seems to
us perfectly clear that defendant neither in his answer nor in
his evidence attempted to rely upon the doctrine of rescission. It
seems equally plain to our minds that the defendant's answer seeks
to plead the warranties contained in the contract, and to allege
a breach thereof to the defendant's damage. It is true the ans-
wer in its introductory paragraph merely "admits, denies, alleges
and shows the court as follows," and thereupon proceeds to allege
the contract with warranties and the breach thereof, alleges the
contract price to be $320, and specifically alleges that the heating
plant was not of the value of $320 but was totally and entirely
worthless, and for a counterclaim and set-off alleges that by
reason of said unskillful and unworkmanlike construction of said
heating plant, "as hereinbefore specifically stated and alleged," he
has been damaged in certain specific sums, among which is the
payment of $150 on the contract price of the plant, and at the con-
clusion of the answer prays judgment that plaintiff take nothing
by his action, and that defendant have and recover of plaintiff
his damages in the sum of $820, with costs and disbursements.
But that this answer, although drawn in a somewhat unusual and
peculiar manner, was sufficient as pleading a counterclaim for
damages, we have no doubt. We are not called upon at this time
to determine whether defendant might be entitled to recover
all the items of damage alleged. It is sufficient for the purposes

of this appeal to note that if the allegations of the defendant's counterclaim were proved, and there is evidence in the record tending to sustain it, namely, that the heating plant as such was absolutely of no value whatever, the defendant would be entitled to recover at least the amount paid by him on the purchase price. Thresher Co. v. Shirmer, 122 Iowa, 699, 98 N. W. 504; McConnell v. Lewis, 58 Neb. 188, 78 N. W. 518.

[2]    It is respondent's further contention that defendant's counterclaim should be held insufficient under the ruling of this court in Acme Harvesting Mach. Co. v. Barkley, 22 S. D. 458, 118 N. W. 690, for the reason that the counterclaim does not allege what the value of the heating plant would have been if as warranted. We do not regard that case as controlling. In that case there appears to have been no allegation in the answer, either of the contract price of the machinery warranted, or of the value of the property, if as warranted. In the case at bar the counterclaim alleges the contract price of the heating plant, and the contract price thus pleaded may well be deemed a sufficient allegation of the value of the heating plant if as warranted. And this allegation is not only conceded by the ruling of the court on the motion to direct a verdict, but is sustained by the plaintiff's own evidence that the plant was worth the sum of $320.

[3]    Appellant further alleges error in refusing defendant's motion for leave to amend his answer so as to plead an implied warranty under the statute and a breach thereof. It is conclusively shown that the contract itself contained written warranties, and, under the well-settled rule of law, there could be no implied warranties. The court, therefore, did not err in refusing the amendment. And, in any event, under the circumstances of the case, we are of opinion that the court committed no abuse of discretion in denying the proposed amendment, even though competent. Other matters are discussed in appellant's brief, but we deem it unnecessary to consider them.

We are clearly of the opinion that the trial court erred in sustaining plaintiff's motion for a directed verdict. The order and judgment appealed from are therefore reversed, and a new trial ordered.