SLINGER, Respondent, v. TOTTEN, Appellant.

(160 N. W. 1008.)

. (File No. 3989.    Opinion filed January 20, 1917.)

1.  **Sales Warranties—Sale of Seed Corn—Whether Seed Would Grow—Implied Warranty.**

   Where plaintiff ordered seed corn from defendant, and planted it without making any test, while having ample time to do so, and upon its failure to germinate, sued for breach of warranty under the sale contract, and for loss of his crop, **held,** that under defendant's representations in a catalogue, which was claimed to warrant the quality of the seed corn, and which recited that all seeds were thoroughly tested, assured that the seeds were full of life and, with normal conditions, a perfect stand of plants would result, and "guaranteed" all seeds sent out by defendant; that kernels germinated quickly, represented that seeds might be tested any way purchaser liked, and that ten days after receipt of goods would be allowed for making test, and if not satisfactory, price would be refunded, **held,** that there was no implied warranty that the seed would germinate, defendant having "guaranteed" that the corn had been tested, and that it would test satisfactorily, not that it would grow if planted in the field; that by expressly warranting the corn to test satisfactorily, defendant limited his warranty to the results of a test, and by agreeing to refund purchase money in case test did not result satisfactorily, he limited liability to amount of purchase money.

2.  **Same—Implied Warranty, Express Warranty as Excluding.**

   Under the law of sales, an implied waranty arises only when there is no express warranty, which latter excludes an implied warranty.

Appeal from Circuit Court, Clay County.    Hon. Robert B. Tripp, Judge.                .

Action by Albert Slinger, against S. M. Totten, doing business as The Totten's Vermillion Seed House, to recover damages for alleged breach of warranty in a sale of seed corn.    From an order overruling a demurrer to the complaint, defendant appeals. Reversed.   ˙

   *Gunderson & Gunderson,* and *French & Orvis,* for Appellant.

   *T. M. Zink,* and *H. G. Tilton,* for Respondent.

   Under point one of the opinion, Respondent submitted that: The catalogue does not require the respondent to test the seed corn.    Vendor's advise may have been good, but it is not binding

on the customer. That there is an express warranty as to the quality, kind and fitness of the seed corn sold to respondent by appellant. If appellant desired to limit this general warranty he should have done so by language unmistakable in its meaning and susceptible of being understood by the persons to whom he mailed his catalogue. This he wholly failed to do. He offered advice and gave recommendations, but there are not limitations of the general warranty contained in the catalogue; and cited: Sanford v. Brown, 50 L. R. A. (N. S.) 782; Lindsey v. Fricke, 109 N. W. 948; McCormick v. Harvesting, etc., 95 N. W. 886, 887; Hammond v. Sandwich, 131 N. W. 1097, 1098.

(2) To point two of the opinion, Appellant submitted that: While, as a general rule, no warranty will be implied where the parties have expressed in words the warranty by which they mean to be bound, yet the rule does not extend to the exclusion of warranties implied by law where they are not excluded by the terms of the contract; and cited: 2 Benj. on Sales, Sec. 1002; Bucy v. Pitts Agricultural Works (Ia.) 56 N. W. 541; Backmore v. Fairbanks, (Ia.) 44 N. W. 548.

POLLEY, J. [1] This action was brought by plaintiff to recover damages for alleged breach of warranty of a quantity of seed corn sold to plaintiff by defendant. Plaintiff ordered the seed corn, by mail and without inspection, from a catalogue issued by defendant, and whatever warranty was made by defendant is found in said catalogue. The portion of said catalogue claimed to constitute said warranty is as follows::

"*  *  *  My seeds are all good, and I want every purchaser to know as near as possible just what he will get when he sends in his order. * * * All seeds are thoroughly tested. The value of tested seeds cannot be overestimated. You are assured that the seeds are vigorous and full of life, and, with normal conditions, you will get a perfect stand of plants that will be a pleasure to watch grow instead of a disappointment. I guarantee all seeds sent out from this house. All seeds are carefully tested by me before shipment is made. Therefore I am perfectly willing to guarantee a satisfactory test. Ten days after you receive the goods will be allowed for you to make a thorough test. Test them any old way you like and, if not satisfied, let me know and I will refund your money. Let me urge right

here, it matters not from whom you buy, you should carefully test your seed. There is too much at stake for you to take any chances in this matter. All my seed corn is grown in Clay county, South Dakota. To get a good crop of corn, it is absolutely necessary to have good seed. It costs as much to prepare the ground, and is just as expensive to cultivate the ground for half a stand from poor seed as where you have a full stand from good seed, but the difference in the yield is greater than most people would think. Don't wait till spring and go to the crib and trust to luck; get busy now and test your seed and know. * * * We have used the greatest care in handling our seed and the tests we are now making show the good work done, as the tests run very strong. If seeds are not as represented and do not test out satisfactorily to you, we take it back and you get your money and no kicking. * * * *Early Murdock.* This is one of the grandest varieties of early corn ever offered, and one that will surprise and please any farmer who tries it. Stalks grow seven to eight feet high and set the ears about 3½ feet from the ground—an ideal height for picking. It is a very early kind, ripening in ninety to ninety-five days. It is a pure yellow, deep grain, remarkably thoroughbred and true to type; has eighteen to twenty rows, small cob. All ears are well matured, kernels germinate quickly, and send up good strong plants right from the start. One remarkable and pleasing peculiarity about the Early Murdock that I noticed in going over my fields was that there were very few barren stalks. Nearly every stalk has from one to two large ears. Mr. Farmer, you should try this corn. It is good, and I know you will like it."

Plaintiff purchased the variety of corn above described as "Early Murdock," and planted it without making any test whatever. He alleges in his amended complaint that the planting was done in a reasonably careful manner; that it was done in the proper time of the year; that the ground in which it was planted was properly prepared for the planting of corn; and that the weather and other conditions at the time the corn was planted, and for a sufficient length of time thereafter for said corn to germinate, was favorable to the germination of corn, but that notwithstanding said facts only a very small percentage of said corn ever germinated or grew. The result was that,

although he replanted his field with other seed corn he succeeded in raising only about half a crop, and he now seeks to recover from defendant the damage he suffered by reason of the partial loss of his corn crop.

Defendant demurred to the amended complaint on the ground that it does not state facts sufficient to constitute a cause of action, and, from an order overruling such demurrer, defendant appeals.

Plaintiff bases his right of recovery upon the theory that, the corn having been sold for seed, there was an implied warranty that it was suitable for the purpose for which it was sold, or, in other words, that it would grow when planted. It is conceded by both parties that, by the use of the language quoted from the catalogue, defendant expressly warranted that, if tested, the corn would give satisfactory results, and that, if tested, and the results were not satisfactory, plaintiff might return the corn and his money would be refunded. But it is contended by plaintiff that the making of such test was permissible only, and not obligatory upon him, and that in addition to warranting the corn to test satisfactorily, there is also "an express warranty as to the quality, kind, and fitness" of the said seed corn. This contention is based upon the following isolated clauses of the contract quoted in the amended complaint:

"My seeds are good and I want every purchaser to know, as near as possible, just what he will get when he sends his order. * * * All seeds are thoroughly tested. The value of tested seeds cannot be overestimated. You are assured that the seeds are full of life and, with normal conditions, you will get a perfect stand of plants that will be a pleasure to watch grow instead of a disappointment. * * * I guarantee all seeds sent out from this house. * * * All ears are well matured, kernels germinate quickly, and send up strong plants right on the start. * * * It is good and I know you will like it."

Whether this language, if unqualified by other portions of the contract, would bear the construction placed upon it by plaintiff it is not necessary to determine. The entire contract must be read together, and, when so read, it does not support plaintiff's contention. While the language of the warranty is broad, so far as the general quality of the corn is concerned, it is limited in

respect to the rights of the plaintiff and the liability defendant is willing to assume. Defendant "guarantees" that the corn will test satisfactory, not that it will grow if planted in the field. It is well understood that by testing seed corn is meant the planting of a small quantity of it in a hotbed or other place where it is protected from out-door weather conditions. It is merely a test of the germinating powers of the seed under favorable conditions, and it may well be that a vendor of seed corn would be willing to refund the purchase money in case it would not test satisfactorily when he would not be willing to warrant, either expressly or impliedly, that it would grow when planted in the field and become liable for the value of a field of corn in case said seed did not grow. By expressly warranting the corn to test satisfactorily he limited his warranty to the results of a test, and by agreeing to refund the purchase money in case a test did not show satisfactory results, he limited his liability to the amount of the purchase money.

[2] It is a well settled principle of law as applied to sales that an implied warranty arises only when there is no express warranty, and that an express warranty always excludes an implied warranty. Tied. on Sales, § 182; Mechem on Sales, § 1259; 35 Cyc. 392; Sheafe v. Zastrow, 30 S. D. 159, 138 N. W. 16. While the warranty expressed in the contract and the implied warranty contended for by the plaintiff are stated in different language, both warranties relate to the same quality of the seed corn, to-wit, to its germinating quality. The only difference is in the manner of ascertaining the existence of this quality.

Under the terms of the contract as set out in plaintiff's amended complaint, he had it in his power to protect himself from any loss whatever except the trifling expense of testing the corn. He alleges in his amended complaint that he purchased the corn on or about the 1st day of February, and that he did not plant it until between the 11th and 20th days of the following month of May. Had he availed himself of his rights under the terms of the contract, and as the defendant urged him to do, by testing the corn within ten days after he purchased it, he would have ascertained that it was not fit for seed and would not only have been able to return it and have had his purchase money

returned to him, but could have procured other seed before planting time. Having failed to make the test of the said seed corn, as provided for in the contract, and having planted the same without testing it, he assumed the risk of its germinating qualities, and the defendant was relieved from further liability.

The order appealed from is reversed.